# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**LESLIE C. ROBINS, et al.,**
        Plaintiffs,

    v.                                    Case No. 09-CV-00930

**PSF HOLDINGS LLC, et al.,**
        Defendants.

---

## DECISION AND ORDER

Plaintiffs Leslie Robins and Colleen Devries-Caliendo bring this action to determine whether they or defendant PSF Holdings LLC ("PSF") are entitled to the interest on funds withheld for state taxes by the Wisconsin Lottery Division ("the lottery division"). I previously allowed plaintiffs to proceed on their breach of contract claim. Before me now are the parties' cross-motions for summary judgment.

### I. FACTS

In 1993, plaintiffs won over $111 million in the Wisconsin Powerball Lottery. The lottery division was to pay plaintiffs in twenty annual installments of which each plaintiff would receive half. After collecting eight payments, plaintiffs entered into two identical agreements (hereinafter "the agreement") selling, for tax reasons, the rights to the remaining twelve-year stream of payments to PSF. Before signing the agreement, the parties contemplated that PSF would elect to forego the remaining twelve payments from the lottery division and instead receive an immediate lump sum payment. PSF also agreed to challenge any taxes withheld by the lottery division from the lump sum payment.

The agreement stated that the "Purchase Price to be Paid Lottery Winner" was "the approximate amount of $22,324,550.00" with an "exact Purchase Price . . . equal to the lump sum amount offered by the Lottery Division . . . less three percent (3%) for Purchaser's fee in connection with this transaction." (Decl. of Gregory W. Lyons Ex. H (see the "Terms Rider to Sale Agreement").) The agreement also required PSF to create a trust to receive the funds from the lottery division and to pay such funds to plaintiffs over time. The trust was to pay out the funds by issuing two promissory notes to each plaintiff. The trust was to issue the first note within ten days of its receipt of the initial cash payment from the lottery division and the second note within ten days of its receipt of the tax refund.

The agreement states that the trust must issue each promissory note in the form specified in Exhibit A to the agreement. (Id. Ex. H ¶ 4.) Each note has a payment schedule attached to it and requires the trust to secure the payments under the note by depositing an amount equal to the "Initial Principal Amount" specified in the note into a separate account with DB.Alex.Brown, LLC (the investment arm of Deutsche Bank). (Id. Ex. K.) The plaintiff holding the note then has the right to direct the investment of the deposited funds so that he or she can insure that the invested funds will be sufficient to cover the payments due under the notes. If the investments designated by the plaintiff holding the note perform poorly and the balance in the investment account drops below the amount of a scheduled payment, the trust will issue a final payment equal to the remaining account balance and will not be liable for any further payments under the note. If the investments perform well, the trust must pay out whatever remains in the account on the note's maturity date.

In December 2000, the trust elected to receive two immediate lump sum payments each in the amount of $24,403,055.82 from the lottery division. From each lump sum

2

payment, the lottery division withheld 28% for payment of federal taxes and 6.75% for payment of state taxes and paid the trust the remaining balance. Upon receipt of these payments, the trust issued the first promissory notes to plaintiffs. The trust then challenged the taxes withheld by the lottery division. In 2001, the Internal Revenue Service refunded all of the federal taxes, and the trust issued the second promissory notes to plaintiffs. Because the Wisconsin Department of Revenue ("DOR") had not yet refunded the withheld state taxes, the parties agreed to modify the agreement to require the trust to issue a third set of promissory notes to address the anticipated state tax refund. In May 2005, the DOR refunded $3,233,178.23 from the withheld state taxes plus $1,138,433.14 in interest. The trust then issued the third promissory notes to plaintiffs. However, the trust did not include the interest on the withheld state taxes in the initial principal amounts of the promissory notes. Plaintiffs brought suit because they claim they are entitled to the value of the interest payment from the DOR.

## II. LEGAL STANDARD

Summary judgment is required if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The question at issue is one of contract interpretation, and the parties agree that this question is governed by Wisconsin law. Under Wisconsin law, the interpretation of an unambiguous written contract presents a question of law. Town Bank v. City Real Estate Development, LLC, 300 Wis. 2d 340, 355 (2010). A question of fact is raised only if the terms of the contract are ambiguous, meaning that they are "susceptible to more than one reasonable interpretation." Id. at 356. A contract should be interpreted to give effect to the parties'

3

intent, as expressed in the contractual language, and the language should be interpreted consistent with what a reasonable person would understand the words to mean under the circumstances. Seitzinger v. Community Health Network, 270 Wis. 2d. 1, 15 (2004). A court must consider the language in the context of the contract as a whole. Manpower, Inc. v. Mason, 405 F. Supp. 2d 959, 971 (E.D. Wis. 2005). When there is a conflict between a general and a specific provision of a contract, the specific provision controls. Isermann v. MBL Life Assur. Corp., 231 Wis. 2d 136, 153 (Ct. App. 1999).

### III. DISCUSSION

The parties agree that the trust had to issue the first promissory notes within ten days of receiving the initial cash payments from the lottery division, and they agree that the initial principal amounts of those notes had to equal the cash payments minus PSF's 3% fee. The parties also agree that the trust had to issue the second and third promissory notes within ten days of receiving the federal and state tax refunds. The dispute is whether the initial principal amount of the third promissory note should have included the interest on the withheld state taxes.[1]

I conclude that the relevant language of the agreement, when read in the context of the document as a whole, is unambiguous[2] and makes clear that the initial principal amounts of the third promissory notes should have been equal to the amount the trust

---

[1] The parties initially had a similar disagreement concerning the second promissory note and the interest on the federal tax refund, but they resolved it.

[2] I am no longer of the view expressed in my ruling on defendants' motion to dismiss that the agreement is ambiguous. Based on the language and structure of the agreement, I conclude that it is not susceptible to more than one meaning. Thus, I decline to consider any extrinsic evidence.

4

received from the DOR, i.e. the total of the withheld taxes and the accrued interest. Exhibit A to the agreement (which provides the form of the promissory notes) requires the trust to deposit "an amount equal to the Initial Principal Amount" of each promissory note into a separate investment account with DB.Alex.Brown whenever it issues a note to one of the plaintiffs. (Decl. of Gregory W. Lyons Ex. K.) The payments required by the note are then secured by the investment account, and the funds in the account "will be invested at the direction of the [plaintiff holding the note]." (Id.) The agreement itself also requires the trust "[i]mmediately upon its receipt of the tax refund" to "deposit said refund with DB.Alex.Brown," at which point the funds in the account will secure the payments required by the note, and the plaintiff holding the note will be able to direct investment of the deposited funds. (Id. Ex. H.) These two provisions both describe the same obligation, the obligation of the trust to create an investment account to secure the third promissory note. One describes the amount to be deposited as the initial principal amount of the note, and the other describes the amount to be deposited as the tax refund. Thus, the only logical conclusion is that the initial principal amount of the note must equal the value of the tax refund. The fact that the trust must issue the second and third promissory notes only upon receipt of the tax refunds also supports this conclusion. The parties clearly intended to link the value of the notes to the value of the tax refunds.

PSF argues that because the agreement states that the purchase price is defined as the "lump sum amount offered by the Lottery Division" and because that amount included the taxes withheld but not the accrued interest, the trust did not have to include such interest in the initial principal amount of the third promissory note to plaintiffs. However, PSF's argument fails. First, its proposed interpretation of the trust's obligation

5

to plaintiffs under the agreement would require me to ignore the agreement's more specific language discussed above indicating that the initial principal amounts of the second and third notes should be equal to the tax refunds. Second, it would lead to the absurd result that the trust would have had to pay plaintiffs the full amount of the withheld taxes even if some or all of the funds withheld were never actually refunded. A more reasonable interpretation is that the parties intended the trust to pay out only the amount it actually received in the federal and state tax refunds. Thus, I conclude that the initial principal amount of the third promissory note should have been equal to the state tax refund minus PSF's 3% fee.[3]

I also conclude that the "tax refund" includes interest paid on the withheld funds. The purpose of a tax refund is to return to the taxpayer money improperly withheld, see Black's Law Dictionary (9th ed. 2009) (definition of "tax refund"), i.e. "to return money in restitution . . . or balancing of accounts." Webster's Third New International Dictionary 1910 (1986) (definition of "refund"). This purpose cannot be accomplished unless the government pays interest on the withheld taxes. The interest is compensation for the lost time value of the money withheld, and the amount of interest accrued reflects the amount of taxes withheld and the duration of the withholding. See Wis. Stat. § 71.82; 28 U.S.C. § 2411. The purpose of the agreement also supports this conclusion. The purpose was to change the manner and timing of plaintiffs' receipt of their lottery winnings, not to transfer any part of their winnings to defendants. This is why the agreement calls for plaintiffs to pay PSF a 3% fee for its services.

---

[3] Plaintiffs concede that whatever I conclude with respect to the initial principal amount, that amount should be reduced by PSF's 3% fee.

6

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that plaintiffs' motion for summary judgment [DOCKET # 36] is **GRANTED**, and defendants' motion for summary judgment [DOCKET # 32] is **DENIED**.

Dated at Milwaukee, Wisconsin, this 4th day of January 2012.

                                                        s/_____
                                                        LYNN ADELMAN
                                                        District Judge